UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


NICOLE R. GRABOWSKI,

    Plaintiff,                                      CIVIL ACTION NO. 13-10699

  v.                                         DISTRICT JUDGE LINDA PARKER
                                                MAGISTRATE JUDGE CHARLES E. BINDER

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

    **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment should be **DENIED**, and that of Defendant **GRANTED**, as substantial evidence exists on the record that claimant remains capable of performing a significant number of jobs in the economy.


**II.  REPORT**

    **A.  Introduction and Procedural History**

    Plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on September 23, 2009, alleging that she had become disabled and unable to work on January 29, 2007, at age 30, due to a bi-polar disorder, depression, dependent personality disorder and poly-substance dependence.  Benefits were

denied by the Social Security Administration. A requested <u>de novo</u> hearing was held on May 3, 2011, before Administrative Law Judge (ALJ) Richard L. Sasena. The ALJ found that the claimant was not entitled to disability benefits because she retained the ability to perform a significant number of jobs existing in the economy. The Administrative Law Judge determined that the claimant could work at all exertional levels from sedentary to heavy, so long as only superficial contact with co-workers was required. Suitable jobs were simple and routine, and did not involve interaction with the general public. They required little judgment and could be learned in a short period. The Appeals Council declined to review that decision and Plaintiff commenced the instant action for judicial review of the denial of benefits. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

Plaintiff was 34 years old at the time of the administrative hearing (TR 35). She had a tenth grade education, and had been employed as a assembler/sorter, cashier and office clerk during the relevant past (TR 33, 189, 302). Claimant dropped out of high school after becoming pregnant with her first child (TR 38, 432). Claimant alleged disability since January 2007, due to mental depression, panic attacks and opiate dependence (TR 40-41, 49, 55-57). She testified that emotional difficulties, particularly her inability to handle stress, prevented her from returning to work (TR 43). Plaintiff explained that she had become anti-social and rarely left her home (TR 46, 49). Claimant lived with her boyfriend, and often times baby sat for the children living in her home (TR 36). Claimant's caseworker, Laura Moore, testified that Plaintiff frequently failed to remember to take her medications, and was

not capable of maintaining proper hygiene (TR 61-63). Nevertheless, Plaintiff remained capable of performing household chores, read books, watched television and took occasional walks for exercise (TR 44).

A Vocational Expert, Michele Robb, classified Plaintiff's past work as light, unskilled activity (TR 69). The witness testified that there were no jobs for claimant to perform if her testimony was fully accepted[1] (TR 70). If she were capable of work at all exertional levels, however, there were numerous unskilled dishwasher, packaging, janitorial and assembly jobs that she could still perform with minimal vocational adjustment (TR 69-70). These simple, routine jobs involved only superficial contact with co-workers, and could be learned in a short period of time. They required little judgment, and did not involve interaction with the general public (TR 69).

### B. ALJ Findings

The Administrative Law Judge found that Plaintiff was impaired as result of a bi-polar disorder, depression, dependent personality disorder and poly-substance dependence, but that she did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's emotional difficulties limited her to simple, routine work assignments requiring little judgment that protected her from contact with the general public. The Law Judge further restricted claimant from jobs that required functioning as a team member, but she could have occasional interaction with

---

[1] The witness opined that claimant's alleged inability to concentrate, complete tasks and remember details due to her emotional difficulties would preclude all work activity (TR 70-71).

co-workers. The ALJ found that the claimant retained the residual functional capacity to perform a significant number of heavy, light and sedentary unskilled work, within those limitations, as identified by the Vocational Expert (TR 17-21).

### C. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

In the instant case, Plaintiff does not challenge the Law Judge's determination that her physical impairments would not interfere with her ability to perform a restricted range of work at all exertional levels. Instead, the claimant maintains that emotional difficulties, particularly her inability to handle workplace stress, have prevented her from returning to work. The law is clear, however, that the mere existence of an impairment, even a severe one, will not entitle the claimant to disability benefits unless the impairment prevents her from returning to her previous work or any other substantial, gainful activity existing in the national economy, considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A), 20 C.F.R. § 416.1505 (2013).

### D. Discussion and Analysis

Substantial evidence exists on this record supporting the Commissioner's conclusion that Plaintiff remained capable of performing a significant number of unskilled jobs at all exertional levels. The medical evidence, as a whole, fails to provide objective support for Plaintiff's allegations of a disabling mental disorder. Although the Law Judge found the presence of mental impairments identified in the A criteria (affective and personality disorders and substance addiction), the evidence fails to establish significant functional limitations identified in the four categories of the "B" criteria.

The evidence of record shows that Plaintiff remains capable of performing a variety of daily activities and that she is able to communicate effectively with others[2]. The record

---

[2]The first area of the B criteria, known as "activities of daily living", includes cleaning, shopping, cooking, maintaining a residence, using the telephone and caring for one's grooming and hygiene. The second area, social functioning, refers to an individual's capacity to interact appropriately and communicate

5

revealed that Plaintiff could perform housework, read, watch television and go for walks (TR 208-210). She was able to live with her boyfriend and several other adults and children in same household. Claimant would frequently babysit the children living in her home, and she enjoyed talking on the telephone and texting over the internet (TR 16, 77, 210). This suggests a substantial ability to interact well with other people while remaining goal orientated  Given this evidence, the Law Judge reasonably determined that claimant's daily activities and social functioning were, at most, moderately restricted.

While Plaintiff alleged that her affective and personality disorders interfered with her memory and ability to concentrate[3], she also indicated that he was able read, watch television and finish performing her household chores (TR 44-45). These abilities stand in sharp contrast to her allegation that she suffered from a complete inability to concentrate. Dr. Rokeya Muhaimeen, a consulting psychiatric examiner, reported in June 2011, that Plaintiff would have no problems understanding and carrying out simple instructions, and would have only moderate problems interacting with the public or supervisors (TR 581-582). This medical opinion is consistent with the ALJ's finding that the claimant could perform simple, routine tasks requiring little judgment and that could be learned in a short time (TR 17).

The last area of function under the "B" criteria is deterioration or decompensation in work or work-like settings, which refers to the "repeated failure to adapt to stressful

---

effectively with others, including family, friends and merchants. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2).

[3]The third area of function evaluated under the "B" criteria is concentration, persistence, and pace, which refers to the "ability to sustain focused attention sufficiently long to permit the timely completion of tasks commonly found in work settings." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3).

6

circumstances which cause the individual either to withdraw from that situation or to experience exacerbation of signs or symptoms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(4). The ALJ acknowledged that Plaintiff had repeated episodes of decompensation, but noted that they had not lasted the requisite two weeks to be considered "extended" episodes (TR 16). In order for an episode to be considered one of "extended duration," it must have lasted for at least two weeks. *Id*. Plaintiff has not shown that her episodes of decompensation lasted longer than two weeks. Moreover, the claimant could maintain socially appropriate behavior, and keep up basic standards of neatness and cleanliness. The clinicians added that Plaintiff could make simple, work-related decisions, and independently perform routine, repetitive tasks. Claimant reportedly had the capacity to understand, remember and carry out short, simple instructions (TR 77-83, 354-370, 375, 581). No physician imposed a specific work-preclusive limitation on claimant's functioning. Although Plaintiff contended that emotional difficulties caused profound cognitive limitations, her mood showed much improvement as long as she took her medications as directed (TR 543).

Although Plaintiff expressed a desire to cease her substance abuse, the record did not contain evidence of any rehabilitative treatment (TR 20). While Plaintiff testified that she attended an inpatient drug rehabilitation program in February 2011 (TR 65), she failed to provide supporting documentation to the ALJ even though he left the record open. Significantly, Plaintiff's ability to speak in a logical, coherent manner while remaining well organized suggests that she does not suffer disabling anxiety or depression. Furthermore, the types of unskilled jobs identified by the Vocational Expert (dishwasher, packaging, janitorial

and assembly) would not cause a great deal of stress. These entry level jobs did not involve any interaction with the public, and only superficial contact with co-workers and supervisors (TR 69). The Law Judge properly found that the degree of limitation for each of the four B criteria was only moderate and not severe. As a result, I suggest that Plaintiff fails to meet the criteria of the Listing of Impairments.

It is the rare case, indeed, the exception, in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that she could not return to his past relevant work, the Plaintiff here effectively shifted to the Commissioner the burden of proving that she had the vocational qualifications to perform alternative jobs in the economy, notwithstanding her various impairments. The Commissioner, however, met her burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to hypothetical questions that took into consideration claimant's educational and vocational background, along with her significant impairments, the Vocational Expert testified that there were numerous

unskilled dishwasher, packaging, janitorial and assembly jobs that she could still perform with minimal vocational adjustment (TR 69-70). These simple, routine jobs involved only superficial contact with co-workers, and could be learned in a short period of time. They required little judgment, and did not involve interaction with the general public (TR 69). Given the objective clinical findings of the examining physicians of record, substantial evidence exists on the record that Plaintiff retained the residual functional capacity for a restricted range of work activity at all exertional levels.

### E.  Plaintiff's Request for Remand

Plaintiff requests a remand in order to allow the Commissioner to consider medical evidence first submitted not to the ALJ, but to the Appeals Council. Once a district court acquires subject matter jurisdiction to review a final decision of the Commissioner, the court has the power to affirm, modify, reverse or remand the action. 42 U.S.C. § 405(g) (1982)[4]. Sentence six of this statute authorizes the court to remand the case for additional administrative action to consider new evidence. Before such a remand can be ordered, however, the new evidence must be material, and good cause must be shown for the failure to submit the new evidence earlier. The party seeking the remand has the burden of proving

---

[4]In *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171 (6th Cir. 1994), the court analyzed the two provisions of the Social Security Act. In summarizing its understanding of these provisions, the court stated:
> Section 405(g), thus, plainly authorizes two types of remand:  (1) a post-judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (a sentence-six remand).

*Faucher*, 17 F.3d at 174.

both the materiality of the new evidence, and the existence of good cause for the failure to obtain the evidence prior to the administrative hearing. Willis v. Secretary, 727 F.2d 551, 554 (6th Cir. 1984). In order for the claimant to satisfy this burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence. See Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980).

I am persuaded that Plaintiff's request to remand for further administrative proceedings to consider the evidence first submitted to the Appeals Council should be denied, as she has failed to show that the new evidence was material, or that it was submitted late with good cause. The medical records from Common Ground Sanctuary spanned the period from July 3, 2010, through July 13, 2010 (TR 584-626). This evidence was already in existence prior to the administrative hearing and the ALJ's decision. Yet, Plaintiff fails to provide a reason why her own treatment records were not available to her so that her attorney could have timely submitted them to the ALJ at the administrative proceeding. As a result, the evidence from Common Ground Sanctuary was not new for purposes of a sentence six remand.

While the treatment notes from Crittenton Hospital, dated October 2, 2011, through October 10, 2011, (TR 607-627), would be considered new (because they occurred after the administrative hearing and decision), the evidence is not material, I suggest, as it would not have changed the ALJ's decision. Contrary to Plaintiff assertion that these hospital records would demonstrate that she experienced an extended episode of decompensation, the

10

hospitalization lasted only eight days. As noted above, in order for an episode to be considered one of "extended duration," it must have lasted for at least two weeks. *See* 20 C.F.R. part 404, subpart P, App. 1, Listing 12.00(C)(4). Accordingly, Plaintiff's request to remand under sentence six of the Social Security Act should be denied.

### F. Conclusions

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be denied, that of Defendant granted and the instant Complaint dismissed.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

|  |  |
|---|---|
| | s/ Charles E Binder |
| | CHARLES E. BINDER |
| Dated: July 14, 2014 | United States Magistrate Judge |