UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE R. GRABOWSKI,

        Plaintiff,

v.

                                        Case No. 13-10699
CAROLYN W. COLVIN, Acting               Honorable Linda V. Parker
Commissioner of Social Security,

        Defendant.

_____/

## OPINION AND ORDER

        Plaintiff applied for Disability Insurance Benefits and Supplemental Security

Income under the Social Security Act on September 23, 2009, alleging that she

became disabled on January 29, 2007.  The Social Security Administration denied

Plaintiff's application for benefits initially.  Upon Plaintiff's request,

Administrative Law Judge Richard L. Sasena ("ALJ")  conducted a *de novo*

hearing on March 3, 2011.  The ALJ issued a decision on October 3, 2011, finding

Plaintiff not disabled within the meaning of the Social Security Act and therefore

not entitled to benefits.  The ALJ's decision became the final decision of the Social

Security Commissioner ("Commissioner") when the Social Security Appeals

Council denied review.  Plaintiff thereafter initiated the pending action.

        Both parties have filed motions for summary judgment, which were referred

to Magistrate Judge Charles E. Binder.  On July 14, 2014, Magistrate Judge Binder

filed his Report and Recommendation (R&R) recommending that this Court deny

Plaintiff's motion for summary judgment and grant Defendant's motion.  (ECF No.

22.)  At the conclusion of the R&R, Magistrate Judge Binder advises the parties

that they may object to and seek review of the R&R within fourteen days of service

upon them.  Plaintiff filed objections to the R&R on August 12, 2014.  (ECF No.

27.)

### Standard of Review

Under 42 U.S.C. Section 405(g):

> Any individual, after any final decision of the
> Commissioner of Social Security made after a hearing to
> which he was a party . . . may obtain a review of such
> decision by a civil action . . . The court shall have the
> power to enter . . . a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social
> Security, with or without remanding the cause for a
> rehearing.  The findings of the Commissioner of Social
> Security as to any fact, if supported by *substantial
> evidence*, shall be conclusive . . .

42 U.S.C. § 405(g) (emphasis added); *see Boyes v. Sec'y of Health and Human

Servs.*, 46 F.3d 510, 511-12 (6th Cir. 1994).  "Substantial evidence is defined as

'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.' " *Abbott v. Sullivan*, 905 F.2d 918, 922-23 (6th Cir. 1990) (quoting

*Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The Commissioner's findings

2

are not subject to reversal because substantial evidence exists in the record to

support a different conclusion.  *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir.

1986) (citing *Baker v. Kechler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).  If the

Commissioner's decision is supported by substantial evidence, a reviewing court

must affirm.  *Studaway v. Sec'y of Health and Human Servs.*, 815 F.2d 1074, 1076

(6th Cir. 1987).

The court reviews *de novo* the parts of an R&R to which a party objects.  *See*

Fed. R. Civ. P. 72(b); *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich.

2001).  However, the Court "is not required to articulate all the reasons it rejects a

party's objections."  *Id.*

### The ALJ's Decision, the R&R, & Plaintiff's Objections

An ALJ considering a disability claim is required to follow a five-step

sequential process to evaluate the claim.  20 C.F.R. § 404.1520(a)(4).  The five-

step process is as follows:

1. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).

2. At the second step, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement of the regulations and which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c).

3. At the third step, the ALJ again considers the medical severity of the

3

claimant's impairment to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets any Listing, he or she is determined to be disabled regardless of other factors. *Id.*

4.   At the fourth step, the ALJ assesses the claimant's residual functional capacity ("RFC") and past relevant work to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

5.   At the fifth step, the ALJ considers the claimant's RFC, age, education, and past work experience to see if he can do other work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find that he or she is disabled. *Id.*

If the ALJ determines that the claimant is disabled or not disabled at a step, the ALJ makes his or her decision and does not proceed further. *Id.* However, if the ALJ does not find that the claimant is disabled or not disabled at a step, the ALJ must proceed to the next step. *Id.* "The burden of proof is on the claimant through the first four steps . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At the first step, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 29, 2009. (ECF No. 11-2 at Pg ID 52.) The ALJ found at step two that Plaintiff has the following severe impairments:

bipolar disorder, depression, dependent personality disorder, and polysubstance

dependence. (*Id*.) The ALJ next analyzed whether Plaintiff's impairments met any

of the listed impairments and determined that they did not. (*Id*. at Pg ID 53-54.)

The ALJ found that Plaintiff suffered only moderate difficulties or restrictions in

activities of daily living, social functioning, and concentration, persistence, or

pace, and that while she had experienced one to two episodes of decompensation,

none had been for an extended duration. (*Id*. at 53.)

At step four, the ALJ determined that Plaintiff had the following residual

functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the
> following nonexertional limitations: the claimant is limited to simple,
> routine tasks that require little judgment and can be learned in a short
> period. She cannot have any contact with the general public. She can
> have occasional interaction with co-workers but cannot function as a
> team member.

(*Id*. at Pg ID 54.) The ALJ concluded that Plaintiff could perform her past work as

an assembler, as such work does not require work-related activities precluded by

Plaintiff's RFC. (*Id*. at Pg ID 57.) The vocational expert testified that Plaintiff

also was capable of performing such occupations as dishwasher, janitor, and

packer, and that there were a significant number of these jobs in Michigan's lower

peninsula. (*Id*. at Pg ID 57-58.) The ALJ therefore concluded that Plaintiff is not

under a disability as defined by the Social Security Act. (*Id*. at Pg ID 58.) In his

5

R&R, Magistrate Judge Binder concludes that there is substantial evidence in the record to support this finding.  (ECF No. 22.)

Plaintiff raises two objections to the R&R.  First, she claims that the magistrate judge was incorrect when he found no error in the ALJ's assessment of whether her mental impairments met and/or equaled a listed impairment. Next, Plaintiff claims the magistrate judge erred in concluding that new evidence submitted by Plaintiff was neither material nor submitted late with good cause. She also disputes the magistrate judge's finding that the new evidence would not have changed the ALJ's decision.

## Analysis

The regulations require an ALJ to follow a "special technique" when accounting for mental impairments at steps two and three of the sequential evaluation.  20 C.F.R. § 404.1520a(c)(3), (e)(2).  As summarized by the Sixth Circuit Court of Appeals in *Rabbers v. Commissioner of Social Security*:

> At step two, an ALJ must evaluate the claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." [20 C.F.R.] § 404.1520a(b)(1). If the claimant has a medically determinable mental impairment, the ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas": "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id*. §§ 404.1520a(b)(2), (c)(3). These four functional areas are commonly known as the "B criteria." See 20

6

C.F.R. pt. 404, subpt. P, app. 1, § 12.00 et seq.; *Craft v. Astrue*, 539 F.3d 668, 674 (7th Cir. 2008). The degree of limitation in the first three functional areas is rated using the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area (episodes of decompensation) is rated using the following four-point scale: none, one or two, three, four or more. *Id*. If the ALJ rates the first three functional areas as "none" or "mild" and the fourth area as "none," the impairment is generally not considered severe and the claimant is conclusively not disabled. *Id*. § 404.1520a(d)(1). Otherwise, the impairment is considered severe and the ALJ will proceed to step three. *See id.* § 404.1520a(d)(2).

At step three, an ALJ must determine whether the claimant's impairment "meets or is equivalent in severity to a listed mental disorder." *Id*. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Id*. § 404.1525(a). In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled.

Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." *Id*. § 404.1525(c)(3). A claimant must satisfy all of the criteria to meet the listing. *Id*. . . . If the ALJ determines that the claimant has a severe mental impairment that neither meets nor medically equals a listed impairment, the ALJ will then assess the claimant's RFC and move on to steps four and five. 20 C.F.R. § 404.1520a(d)(3).

582 F.3d 647, 652-53 (6th Cir. 2009)

As indicated, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, depression, dependent personality disorder, and polysubstance dependence.  He then considered whether those impairments,

considered singly or in combination, met or medically equaled the criteria listings

of 12.04 (affective disorders), 12.08 (personality disorders) and/or 12.09

(substance addiction disorders).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1 §§ 12.04,

12.08, 12.09.  The regulations set forth criteria for each listing and the claimant

must satisfy all of the criteria to meet the listing.  20 C.F.R. § 404.1525(c)(3).

Under sections 12.04 and 12.08, the claimant must satisfy the criteria outlined in

the so-called A *and* B paragraphs, or the criteria in paragraph C.[1]  20 C.F.R. pt.

404, subpt. P, app. 1 §§ 12.04, 12.08.

     The B criteria of both listings are satisfied by a showing of at least two of

the following:

     1. Marked restriction of activities of daily living; or

     2. Marked difficulties in maintaining social functioning; or

     3. Marked difficulties in maintaining concentration, persistence, or
     pace; or

     4. Repeated episodes of decompensation, each of extended duration.

*Id*.  The regulations define the term "marked" when used to measure the degree of

---

[1]Plaintiff has not raised the C criteria as a basis for finding that she satisfies
sections 12.04 or 12.08.  The ALJ addressed whether the criteria in paragraph B
are satisfied and, concluding that they are not, did not address the paragraph A
criteria.  (A.R. at 16.)  For the reasons set forth in Plaintiff's summary judgment
motion, however, the Court finds that criteria satisfied.  (ECF No. 17 at Pg ID 706-
707.)

limitation as

> more than moderate but less than extreme. A marked limitation may
> arise when several activities or functions are impaired, or even when
> only one is impaired, as long as the degree of limitation is such as to
> interfere seriously with [the claimant's] ability to function
> independently, appropriately, effectively, and on a sustained basis.

*Id*. § 12.00(C). The term "repeated episodes of decompensation, each of extended

duration" refers to "three episodes within 1 year, or an average of once every 4

months, each lasting for at least 2 weeks." *Id*. § 12.00(C)(4).

The ALJ concluded that Plaintiff had no marked restrictions or difficulties

and only one to two episodes of decompensation, but none for an extended

duration. *See supra*. He therefore concluded that she did not satisfy the criteria to

meet or equal the impairments listed under sections 12.04 or 12.08. Magistrate

Judge Binder found substantial evidence in the record to support this conclusion.

In her objections, Plaintiff points to evidence suggesting a different

conclusion– i.e., that she suffered marked restrictions and/or difficulties. She

argues that the magistrate judge selectively cited to portions of her testimony at the

administrative hearing concerning her abilities that supported the ALJ's decision

and disregarded other statements reflecting restrictions on those abilities. For

example, Magistrate Judge Binder finds support for the ALJ's conclusion that

Plaintiff has only moderate restrictions in activities of daily living and

concentration, persistence, or pace based on Plaintiff's testimony that she is able to do housework, reads, watches television, and goes for walks.  However, Plaintiff points out that she further testified at the hearing that when she tries to clean, she switches from one task to another, and only "tr[ies] to watch TV."  (*See* ECF No. 11-2 at Pg ID 81.)

This Court finds that the ALJ and Magistrate Judge Binder took selective portions of Plaintiff's hearing testimony and statements suggesting that she is able to engage in activities of daily living, social functioning, and concentration, persistence, or pace, and ignored overwhelming evidence that she in fact is markedly limited in at least two of these areas.  Specifically with respect to activities of daily living and concentration, persistence, or pace, the ALJ and magistrate judge relied upon Plaintiff's report that she reads, watches television, and does housework.  (A.R. at 16, R&R at 6.)  There is no evidence, however, indicating how much Plaintiff is able to read at one time or whether she is successfully reading.  In fact, when asked at the administrative hearing whether she is able to focus when she is watching television or doing something in which she is interested, Plaintiff testified that she is not able to focus because her mind races.  (A.R. at 44.)  She also reported that she has trouble remembering what she reads and that when she does housework she cannot stay focused on a single task.  (A.R.

10

44, 210.)  Further, the fact that Plaintiff may eventually complete each household task is not substantial evidence of only moderate difficulties with respect to concentration, persistence, or pace where there is no evidence as to how long it takes Plaintiff to complete each task and how well the task is done.  The social security regulations instruct that "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the *timely* and *appropriate* completion of tasks . . .."  20 C.F.R. Pt. 404, subpt. P, Appx 1, § 12.00(C)(3) (emphasis added).

Additionally relative to Plaintiff's ability to maintain a household, Plaintiff's father indicated that she does not pay bills and does not have a checking or savings account.  (A.R. 217.) A consultative examiner opined that Plaintiff is not capable of managing benefit funds.  (A.R. 580).  And while Plaintiff's father indicated that she cleans and does laundry, he also reported that she needs encouragement to do these household chores.  (A.R. at 216.)  Moreover, Plaintiff was reported to have worn the same clothes (pajama pants and a t-shirt) and neglected to shower for three days until someone from her Community Network Services treatment team told her she looked awful.  (A.R. at 43.)  As the ALJ recognized, Plaintiff's caseworker reported that she has poor hygiene.  (A.R. at 36.)  She cannot remember to take her medications and often loses them, thus causing her treatment

11

team to assume responsibility for holding and dispensing them.  (A.R. at 40, 64.)

With respect to social functioning, the ALJ and Magistrate Judge Binder relied heavily on the fact that Plaintiff lives with her "boyfriend" and several other adults and children and that she babysits the children living in her home.  (A.R. at 16; R&R at 6.)  However, the evidence reflects that Plaintiff had been living at this location for only a week and had this "boyfriend" for the same length of time. (A.R. at 35, 37.)  As Plaintiff's caseworker testified, Plaintiff frequently changes where she lives, going "from boyfriends to friends to family, back to boyfriends, friends, families.  (A.R. at 60; *see also* A.R. at 522.)  Plaintiff testified that at this location, she spends the day in her pajamas, in her room with the door and blinds closed, doing nothing.  (A.R. at 43, 45.)  Other evidence in the record reflects that Plaintiff has marked restrictions in social functioning.

For example, Plaintiff's medical history reflects ongoing paranoia about people talking about her or staring or looking at her.  (A.R. at 314, 357.)  A consultative medical examiner found that she had "marked" limitations in her ability to interact appropriately with co-workers and to respond appropriately to usual work situations.  (A.R. at 582.)  Laura Moore, Plaintiff's CNS caseworker who testified at the administrative hearing, indicated that Plaintiff is "paranoid about being out in the community around other people, attending groups or

12

anything." (A.R. at 63.)

Plaintiff's report that she babysits the children in her household is not substantial evidence of her ability to function socially, as it is not at all evident from the record what this entails. While the ALJ and Magistrate Judge seem to assume that this involves some "caring" for the children, this Court finds no basis on which to make such an assumption. Notably, Plaintiff's testimony indicated that the adults residing in the trailer with her are also drug addicts, who keep neither themselves nor the trailer clean. (*See, e.g.,* A.R. at 45, 55.) According to Plaintiff, she "watch[es]" the kids in exchange for their opiates. (A.R. at 18, 28, 56.) Plaintiff was not asked and she did not offer what "watch[ing]" the kids entails. Significantly, Plaintiff's own children are in her adoptive father's custody because she is unable to care for them. (A.R. 39.)

For similar reasons, Plaintiff's report that she talks on the telephone and texts does not provide substantial evidence of her ability to function socially. (A.R. at 210) There is no evidence in the record as to who she is calling or texting or the substance of these communications. Thus there is no basis on which to judge whether these interactions are "appropriat[], effective[], and on a sustained basis with other individuals." *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(2).

The ALJ seemed to discredit Plaintiff's testimony relative to the severity of

her limitations based on the fact that "she had not sought or received the level of treatment typical for a completely disabled individual." (A.R. at 20.) He found that "[s]he does not attend counseling on a frequent or consistent basis, even though her visits to Community Network Services show that she is aware of and knows how to access services." (*Id*.) In fact, however, it is not evident at all that *Plaintiff* knows how to access help when she needs it as she has been assigned a treatment team that finds her wherever she is living to provide her needed services.

In short, this Court does not find substantial evidence in the record to support the ALJ's assessment at the third step of the five-step sequential process. Contrary to the ALJ's and magistrate judge's determination, the record evidence reflects that Plaintiff has marked restrictions in at least activities of daily living and maintaining social functioning. As such, she satisfies the criteria in paragraph B of listings 12.04, 12.08, or 12.09 and her impairments meet one or more of those Listings. The ALJ therefore should have found Plaintiff disabled at the third step. Having reached this conclusion, the Court rejects the recommendations in Magistrate Judge Binder's July 14, 2014 R&R and finds it unnecessary to address Plaintiff's second objection to the R&R.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for summary judgment (ECF No.

14

17) is **GRANTED**; and

     **IT IS FURTHER ORDERED**, that Defendant's motion for summary

judgment (ECF No. 19) is **DENIED**.

                  S/ Linda V. Parker             
                  LINDA V. PARKER
                  U.S. DISTRICT JUDGE

Dated: November 10, 2014

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 10, 2014, by electronic and/or U.S. First Class mail.

                  S/ Richard Loury              
                  Case Manager